SIMONTON, Circuit Judge.
This case comes up on appeal from the circuit court of the United States for the Western district of Virginia, at Abingdon. On the 7th April, 1894, the appellant filed his bill of complaint against the appellees in the circuit court of the United States for the Western district of Virginia. The bill, after stating the jurisdictional facts, alleged: That the complainant therein was the owner in fee, entitled to the possession of, and in actual possession of, “all that portion lying in the said county of Buchanan of the tract of five hundred thousand acres of land which was granted by the commonwealth of Virginia to Robert Morris by patent of June 23,1795.” Then follows a full and minute description by metes and bounds of the land in the patent. That the land is wild land, covered by a heavy growth of marketable timber, constituting its chief value, which complainant was about to utilize. That the defendants, without right and without leave of complainant, have come on the land, and are cutting and removing trees and timber of great value therefrom. Then follow other statements showing the facility with which all this could be done. The bill prayed an injunction. Upon the filing of the bill a rule to show cause why an injunction be not granted was issued, and a restraining order was entered. The defendant the Elkhorn & Sandy River Land Trust demurred, and sustained the demurrer with an answer. The entire claim of complainant was put in issue, and his title denied, the defendant asserting title in itself. W. M. Ritter, who was also a defendant, filed his answer, admitting that he was cutting timber on this land, and averring that he did this under the authority of a lease from his co-defendant, the lawful owner. A copy of this lease is in the record. Replication was filed on 21st May, 1894. On 23d May, 1895, an agreement was entered into between the complainant and the Elkhorn & Sandy River Land Trust and W. M. Ritter, and on the 24th February a copy of that agreement, signed by all the parties by their attorneys, was filed in court as a part of the cause, leave having been given for that purpose by the judge, on notice to the parties thereto. This agreement provides: (1) That Ritter should go on and cut and manufacture all timber mentioned in his contract (above referred to) on the tract of land known as the “Greenbrier Tract,” in Buchanan county, part of a 2,093-acre survey. (2) That he deposit all royalties or sums due for said timber as they become due in the National Exchange Bank at Lynchburg, Va., subject to the order of the United States circuit court for the Western district of Virginia, there to remain on deposit until the trial of the action of ejectment pending between the complainant and the defendants, or until the royalties shall be withdrawn by the parties to this agreement. (3) The third makes provision for the speedy trial of *335 the action of ejectment. (4) “That upon either party securing a judgment in the trial court upon said action of ejectment, the prevailing party, upon giving a sufficient bond, payable to the losing party, with security satisfactory to the court, shall be permitted to withdraw all the accumulated royalties from said bank, and shall collect from said W. M. Ritter all subsequent royalties as they become due, pending any appeal that may be taken by the losing party to a higher court, and until the final determination of said action.” The construction of these words is the crucial question in this case.
The next step in the case, as shown by the record, is a notice signed by the attorney of the complainant, to the defendants, that he will move on the 1st day of December, 1895, at 10 a. m., before Hon. John Paul, one of the judges of the court, at Harrisonburg, for an order directing the National Exchange Bank of Lynchburg to pay to complainant all moneys deposited by Ritter with said bank under the stipulation. The motion came on to be heard on 5th December, and the order of the court thereon was duly made and filed. It recites the appearance of the parties before the court, the notice served on the defendants, the production by the complainant, in support of his motion, “of a judgment of this court on the law side thereof” in a cause of H. 0. King, plaintiff, against the Elkhorn & Sandy River Land Trust et al., defendants, in ejectment, entered on 4th December, 1895, giving the words of the judgment, with a full description of the land found in detail by metes and bounds; and then adds:
“Whereupon the court, considering the said agreement and the said judgment, doth adjudge, order, and decree that the said H. C. King is not entitled to recover the whole of the said fund and the future amounts that may become due from the said W. M. Ritter for timber hereafter cut upon the land in controversy in this cause, but only so much of the said fund so deposited, and which may hereafter accrue from future cutting, as may have accrued or may hereafter accrue from the land which was recovered in the said judgment; and that the defendant the Elkhorn & Sandy River Land Trust is entitled to recover so much of said fund as accrued, or may hereafter accrue, from the residue of the 2,093-acre tract named in said judgment. And thereupon the court doth direct that an account be taken and reported by Samuel M. Graham, who is hereby appointed a special commissioner for the purpose, showing the amount and the value of the timber cut by the said Ritter upon either side of the line of the said land named in the said judgment.”
Then we find the report of the commissioner, showing that of the timber cut by Ritter some of it was on the land recovered by complainant in the ejectment suit, and some on the land of defendants, and that of the royalties paid by Ritter $1,717.02 belonged to complainant, and $1,839.19 properly belonged to the defendant the Elkhorn & Sandy River Land Trust. This report was confirmed on 6th May, 1896, and the bank, acting as depositary, was ordered to distribute the fund in accordance with it. At the request of complainant this order was suspended for 60 days from 9th May, 1896, to give him time to appeal therefrom, and to give a supersedeas bond. It was then suspended for a further period of 30 days from 9th July, 1896, for the same purpose. Soon thereafter complainant moved before Judge Paul for leave *336 to file a bill of review, and this motion was refused 23d July, 1896. Leave was granted to the complainant to appeal to this court, and the cause comes here on several errors assigned.
As the bill of review seeks to correct errors on the face of the decrees of the 5th of December, 1895, and the 6th of May, 1896, and as a bill of review will lie only for errors of law apparent on the record (Bridge Co. v. Hatch, 125 U. S. 1, 8 Sup. Ct. 811), we will examine the errors assigned to these decrees. The first three assignments of error relate to the decree of 6th May, 1896. They proceed expressly upon the ground that the funds in the hands of the bank were not under the control of the court, were not subject to the orders of the court, and therefore not disposable of by the decree mentioned. The parties mentioned in the record were duly before the court. The complainant wanted an injunction. The defendants wished to go on with the cutting of the timber. The issue between them was undecided. Both were in peril. If the complainant failed, his liability on his injunction bond was a serious one. Delay injured the defendant, and cutting timber exposed it to loss in case the decision went against it. They could each have applied to the court for some sort of relief. They preferred to confer with each other before doing so, and, having conferred and agreed, they put their agreement in writing, and filed it as a part of the cause. Thenceforward it came within the purview of the court. More than this, all the royalty payable' by Bitter for the timber both sides had agreed he should cut was deposited in the National Exchange Bank of Lynchburg, subject to the order of the United States circuit court for the Western district of Virginia. The money, even in the event of perfect success, could not be drawn out by the prevailing party except with security satisfactory to the court. Here we see all the parties to this case make their compact between themselves a part of the proceedings of a cause in court, and in that compact provide that it be held subject to the order of the court, not to be drawn out without its supervision and active co-operation. It is difficult to understand how the appellant could say that the funds in the hands of the bank were not under the control-of the court, or not subject to the order of the court. His own action in giving the notice of 2d December, 1895, and in making his motion of 5th December, 1895, contradicts his assignments of error. The difficulty in the mind of the appellant shown in these and all the other assignments of error seems to be this: He complains of the proceeding by which the court reached its conclusion. But this proceeding was instituted by himself. He gave notice of his motion, applied to the court for the fund, and produced the evidence upon which he made his application. This evidence was, by the agreement, a part of the record in the suit in ejectment. The agreement had spoken of and had provided for a speedy hearing of the action at law, and had provided that the accumulating fund, subject to the order of the court, should be paid to the prevailing party in the action of ejectment upon his securing his judgment. In order to ascertain who was the prevailing party, it became necessary to know what was at issue in *337 the action of ejectment, wliat the plaintiff claimed, and what he ■obtained. If he succeeded in obtaining all that he claimed, then to him belonged all the fruits of victory. But if he succeeded in obtaining only a part of what he clai.med, then surely he could not be entitled to the same result as if he had established his whole claim. The presiding judge saw.this. Perhaps he himself, on the law side of his own court, knew exactly what, and how much, the complainant did succeed in recovering by his suit. But he did not use this knowledge on the equity side of his court. He referred it to his commissioner, to ascertain and ñx the right of the complainant as found for him by a jury. He did not disregard or annul the fourth clause of the agreement between the parties. He considered it, and put his construction upon it, and acted upon this construction. The appellant stands on the words of his agreement, and insists that, having secured a judgment, he was entitled to all the money on all the royalties on all the timber on all the land he claimed. By the same narrow and technical construction, if, after claiming and suing for 3,010 acres of land, the jury had found that he had a good title to 10 acres, he could demand the value of the timber on the 3,000 acres. The appellant, of his own accord, came into equity, and he must do equity. We see ■no error in the decree of the court below, and it is affirmed.